# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

YOLANDA L. [1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendants.

Case No. 1:24-cv-531

Bowman, M.J.

## MEMORANDUM OF OPINION AND ORDER

Plaintiff Yolanda L. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents four claims of error, all which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is AFFIRMED, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

### I. Summary of Administrative Record

Plaintiff applied for Supplemental Security Income ("SSI") in June 2021, claiming disability beginning on October 9, 2019. (Tr. 15, 175-85). Her application was denied initially and upon reconsideration. A telephone hearing was held on May 9, 2023, wherein Plaintiff appeared with counsel and gave testimony before ALJ John M. Prince.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
0

Vocational Expert Brett Salkin also appeared and gave testimony. On July 20, 2023, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 15-29).

Plaintiff was born in March 1977 and was 44 years old on her application date. (Tr. 27). She has a high school education and no past relevant work. (Tr. 27-28).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "Lumbosacral degenerative disc disease; history of alcohol abuse, in remission; major depressive disorder; and generalized anxiety disorder." (Tr. 18). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> She can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, or crawl. She must avoid all exposure to hazards, including heights and dangerous machinery. She should perform no commercial driving. She is limited to a simple learned work routine that does not have fast-paced production demands. She can interact with others on a brief, infrequent, and superficial basis, with superficial meaning that she can converse about work and exchange pleasantries. She can adapt to a structured and predictable work setting with infrequent changes in responsibilities and expectations.

(Tr. 23).

Based upon her RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs in the national economy including housekeeper, mail clerk, price marker. (Tr. 28). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's

decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to consider Plaintiff's impairments in combination; (2) failing to properly consider Plaintiff's subjective complaints; (3) finding that Plaintiff could perform light work; and (4) committing various vocational errors. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

**II.     Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

4

**B. The ALJ's Decision is supported by Substantial Evidence**

1. *Impairments in Combination*

Plaintiff argues that the ALJ failed to comply with SSR 96-8p by failing to consider her non-severe seizure impairment in determining her RFC. Plaintiff's contention lacks merit.

Here, the ALJ's decision clearly indicates that he considered the combined effect of Plaintiff's impairments. (See Tr. 21-23). The ALJ expressly refers to a "combination of impairments" in finding that Plaintiff does not meet any of the Listings. Id. *See also Loy v. Sec'y of Health and Human Servs.,* 901 F.2d 1306, 1310 (6th Cir. 1990) ("An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings."). The ALJ's decision also indicates that he considered whether Plaintiff's impairments met Listings 1.15, 12.04, 12.06 and thoroughly explained his rationale for concluding that she did not meet any of those Listings.

As noted by the Commissioner, the ALJ specifically noted that the regulations and SSR 96-8p required the ALJ to consider the severe and non-severe impairments in combination in formulating the RFC. (Tr. 17). *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 842 (6th Cir. 2005) ("Our review of the ALJ's decision, however, indicates that the ALJ did not fail to combine all of Pasco's impairments. The ALJ specifically noted that the Regulations required him to consider all medically-determinable impairments together if he found any one impairment severe.").

5

The ALJ also indicated that the RFC was based on the "entire record," and he considered all of Plaintiff's symptoms. (Tr. 23). Specifically, the ALJ noted that the record showed Plaintiff having seizures but the impressions of a brain MRI performed on August 29, 2022 revealed no significant abnormalities associated with seizures. Moreover, the state agency medical consultant considered Plaintiff's seizures and found that they caused environmental limitations and the ALJ incorporated those environmental limitations into the RFC. (Tr. 23). In light of the foregoing, the undersigned finds that the ALJ properly considered Plaintiff's impairments in combination.

2. *Plaintiff's RFC*

Plaintiff also argues that the ALJ's RFC finding is not substantially supported. In this regard, Plaintiff argues that the ALJ erred by concluding that the assessments of the state agency psychological consultants were persuasive. Plaintiff's contentions are unavailing.

The RFC is the "most [an individual] can still do despite [her physical and mental] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ determines the claimant's RFC using "all the relevant evidence in [the] case record." Id. Yet it is the claimant's burden to establish her RFC. See id. § 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); see also *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears the burden of demonstrating a more restrictive RFC); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has the ultimate burden of establishing the existence of disability.").

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 404.1520c. The new regulation at 20 C.F.R. § 404.1520c differs from the previous regulation at 20 C.F.R. § 404.1527. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 404.1527(c)(2) with 20 C.F.R. § 404.1520c(a), (b). The ALJ is only required to explain how he or she considered the supportability and consistency factors, 20 C.F.R. § 404.1520c(c)(1)-(2), which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he or she considered medical opinions. See 20 C.F.R. § 404.1520c(b)(2)-(3). Further, in evaluating the statements from the state agency reviewing sources, an ALJ will also consider the evidence in accordance with the new regulations. See 20 C.F.R. §§ 404.1513a(b)(1)(2017), 404.1520c.

Here, in formulating Plaintiff's RFC, the ALJ found the assessments of the State agency psychological consultants persuasive. Notably, in October 2021, Katherine

Fernandez, Psy.D., reviewed the record and found it insufficient to evaluate Plaintiff's claim. (Tr. 91-93). Thereafter, in April 2022, Paul Tangeman, Ph.D., reviewed the updated record and found that Plaintiff could perform simple learned routine work which does not have fast-paced production demands; that she can interact with others on a brief, infrequent, and superficial basis; and that she can adapt to a structured and predictable work setting with infrequent changes in responsibilities and expectations. (Tr. 100-01, 103-05). The ALJ made note that Dr. Tangeman reviewed the record on April 26, 2022, and although additional evidence had entered the record, most of it pertained to the Plaintiff's psychological impairments. (Tr. 27). The ALJ found that although such evidence generally supported the findings of the State agency psychological consultants, the restrictions espoused by the State agency psychological consultants warranted some elaboration in Plaintiff's RFC. Specifically, the ALJ more clearly defined superficial interactions as outlined above. In any event, the ALJ considered their assessments to be persuasive.

Plaintiff argues that the ALJ improperly found the prior administrative psychological findings persuasive because they did not have access to later submitted medical records. However, as detailed above, the ALJ specifically noted this issue in evaluating the opinions. (Tr. 27). As required by 20 C.F.R. § 416.920c(c)(5), the ALJ noted that, since the state agency medical consultants reviewed the record, additional evidence was entered into the record, most of which pertained to Plaintiff's psychological impairments and constitutes a significant portion of the record. (Tr.27, 105, 1844, 1879, 1891, 2353). The ALJ found that the additional evidence generally supported the findings (R. at 27). 20 C.F.R. § 416.920c(c)(2) (consistency). The ALJ also properly noted that

8

Dr. Tangeman cited some evidence to support his conclusions. (Tr. 27, 96-102). 20 C.F.R. § 416.920c(c)(1) (supportability). Consistent with the prior administrative psychological findings, the ALJ found that Plaintiff could perform simple learned routine work that does not have fast-paced production demands and that she could interact with others on a brief, infrequent, and superficial basis. (Tr .23). Plaintiff could adapt to structured and predictable work setting with infrequent changes in responsibilities and expectations (Tr. 23). However, as noted by the Commissioner, the ALJ found that the subsequent evidence record warranted some elaboration, specifically, the ALJ more clearly defined superficial interactions. (Tr. 23, 27). The ALJ defined superficial interaction to mean that Plaintiff could converse about work and exchange pleasantries. (Tr. 23).

Plaintiff, however, claims that the records obtained after Dr. Tangeman's review clearly document that Plaintiff experienced severe symptoms and limitations because of depression, PTSD, bipolar disorder, mood disorder, agoraphobia with panic disorder, dizziness, sleep disturbance, fatigue, suicide ideation, lack of motivation, loss of interest, chronic feelings of sadness, flashback, intrusive memories, excessive worrying, and severe nervousness, difficulty concentration/focus/racing thoughts, and an appetite disturbance. However, it is well established that a mere diagnosis or catalogue of symptoms does not indicate functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir.1990) (diagnosis of impairment does not indicate severity of impairment). As noted by the Commissioner, Plaintiff fails to show how these findings caused greater functional limitations than those found by the ALJ. *See Roberts v. Comm'r of Soc. Sec.*, No. 1:19-cv734, 2020 WL

9

5875869, at *5 (S.D. Ohio Oct. 2, 2020) (affirming where Plaintiff failed to explain how medical records he cited "support further physical limitations in the RFC than the ALJ assessed"), report and recommendation adopted, 2020 WL 6445908 (S.D. Ohio Nov. 3, 2020).

Plaintiff has presented no medical opinion that her impairments imposed greater limitations than those identified by the state agency medical consultants. As outlined above, the burden rests with Plaintiff establish disability. *See Ware v. Comm'r of Soc. Sec*., No. 2:17-CV-01015, 2019 WL 696945, at *11 (S.D. Ohio Feb. 20, 2019) ("[W]here a plaintiff challenges an ALJ's mental health related findings but does not explain what limitations the ALJ erred in excluding or point to any evidence from within the applicable period suggesting that [he] had additional mental health related restrictions, then the plaintiff's challenge is meritless.").

In light of the foregoing, the undersigned finds that the ALJ properly evaluated the findings of the state agency psychologists.

3. *Subjective Complaints*

Plaintiff further argues that the ALJ erred in evaluating her subjective complaints. In this regard, Plaintiff contends that the ALJ improperly considered her activities of daily living, including working part-time and traveling with her family. Plaintiff's contentions lack merit.

An ALJ's assessment of subjective symptoms is generally given great deference. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, the assessment of subjective symptoms cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ's assessment of subjective

symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (October 25, 2017). But SSR 16-3p was not intended to substantially change existing law. *See Banks v. Comm'r of Soc. Sec.*, Case No. 2:18-cv-38, 2018 WL 6060449, at *5 (S.D. Ohio Nov. 20, 2018) (quoting explicit language in SSR 16-3p stating intention to "clarify" and not to substantially "change" existing SSR 96-7p), adopted at 2019 WL 187914 (S.D. Ohio Jan. 14, 2019). Whether described as a "credibility" determination or a "consistency" determination under SSR 16-3p, the ALJ must evaluate the "intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *7-8 (listing seven factors); see also 20 C.F.R. §§ 404.1529(c), 416.929(c) and former SSR 96–7p. Therefore, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, in assessing Plaintiff's subjective complaints, the ALJ determined that many of the activities Plaintiff performed during the relevant period undermine her allegations regarding the intensity, persistence, and limiting effects of her impairments. (Tr. 25). In this regard, the ALJ noted the fact that the Plaintiff delivered both fast food and groceries after the alleged onset date undermines her contention that she struggled to interact with others. Id. The ALJ further noted that these records suggest that she continued to do this as recently as October 2022. Id. The ALJ acknowledged that Plaintiff

indicated that she recently discontinued such activity and acknowledged that the manner in which her job delivering groceries ended lends some support to her allegations of agoraphobia. The ALJ further indicated that the record also references Plaintiff selling things online, which detracts from her allegations that she cannot remember things or type. (Tr. 25). The ALJ also noted that around May 2022, Plaintiff traveled with her family to the State of Florida. As such, the ALJ determined that such activities undermine many of the Plaintiff's allegations, especially those regarding her purportedly limited ability to interact with others, and demonstrates that the demonstrable intensity, persistence, and limiting effects of the Plaintiff's impairments would not prevent her from working.

The ALJ also noted that the medical evidence does not illustrate that the demonstrable intensity, persistence, or limiting effects of the Plaintiff's psychological impairments prevent the claimant from working. Notably, the ALJ acknowledged that Plaintiff, at times, exhibited abnormal psychological clinical signs associated with depression and anxiety, including anhedonia, Plaintiff also frequently exhibited unremarkable psychological clinical signs. Furthermore, the ALJ determined that the fact that Plaintiff admitted improvement from psychotropic medication, especially diazepam, illustrates the amenability of her psychological impairments to treatment.

Plaintiff, however, contends that the extreme difficulty that she experienced as a result of her mental health impairments while working part-time for Instacart strengthens her allegations and testimony regarding the debilitating limitations that she has due to her mental health impairments. Plaintiff further argues that the fact that she was able to perform very sporadic work activities does not equate to the ability to perform sustained work activity on a full-time basis. She also argues that the fact that she traveled to the

12

State to Florida sometime around May 2022, does not mean that Plaintiff is capable of engaging in sustained work activity. Plaintiff's contention is unavailing.

It remains the province of the ALJ, and not the reviewing court, to assess the consistency of subjective complaints about the impact of a claimant's symptoms with the record as a whole. *See Rogers v. Com'r*, 486 F.3d 234, 247 (6th Cir. 2007). A credibility/consistency determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony, as the ALJ did in this case, where there are inconsistencies and contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). Here, the ALJ noted many inconsistencies throughout his opinion. Having closely examined the record presented, the Court finds the ALJ's analysis of Plaintiff's subjective complaints to be substantially supported.

*4. Vocational Errors*

Last, Plaintiff contends that ALJ's reliance on the testimony of the vocational expert (VE) was not supported by substantial evidence (Pl. Br. 12-13). Specifically, Plaintiff claims that the VE's testimony conflicts with the descriptions of jobs listed in the Dictionary of Occupational Titles ("DOT"). As such, Plaintiff maintains that the ALJ's decision at step five of the sequential evaluation process is not supported by substantial evidence. Plaintiff's assertion lacks merit.

At the administrative hearing, responding to a hypothetical question that incorporated the same limitations as those included in the ALJ's RFC finding, the vocational expert testified that an individual with such limitations could perform work as

13

a housekeeper, a mail clerk, and a price marker (Tr. 23, 28, 77-78). Plaintiff suggests that the vocational expert's testimony is inconsistent with the Dictionary of Occupational Titles (DOT). In this regard, Plaintiff notes that the ALJ's RFC limited Plaintiff to "simple learned work routine that does not have fast-paced productions demands. She can interact with others on a brief, infrequent, and superficial basis, with superficial meaning that she can converse about work and exchange pleasantries. She can adapt to a structured and predictable work setting with infrequent changes in responsibilities and expectations." (Tr.23). As such, Plaintiff contends that she is limited to jobs requiring simple instructions and/or tasks which are reasoning level "1" jobs, not reasoning level "3" jobs. The job of mail clerk identified by the vocational expert has a reasoning level of three and therefore would require a greater reasoning level than Plaintiff could perform. See DOT, available at 1991 WL 671813. Plaintiff claims the ALJ erred when he did not identify and resolve the conflict between the occupational evidence provided by the VE and the information in the DOT. Plaintiff's contention lacks merit.

Here, as noted by the Commissioner, the ALJ complied with SSR 00-4p by asking the vocational expert about possible conflicts with the DOT. (Tr. 81). *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (where the ALJ has already fulfilled his obligation to ask the vocational expert whether his testimony conflicts with the DOT, the judge need not independently investigate conflicts in vocational expert's testimony not brought to the judge's attention). Plaintiff did not question the vocational expert's testimony. *See Harris v. Comm'r of Soc. Sec.*, 598 F. App'x 355, 362 (6th Cir. 2015) (citations omitted*); Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Consistent with the SSR 00-4p, the ALJ asked if there was a conflict….The

14

vocational expert testified that there was not….Martin did not bring the vocational expert's mistake to the ALJ's attention. Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct."). As the alleged conflict only applies to one of the three jobs identified by the vocational expert and the ALJ satisfied his obligations under SSR 00-4p, the Court finds any error here to be harmless.

Furthermore, Plaintiff does not challenge the other two jobs identified by the vocational expert. Namely, housekeeper and price marker, exist in significant numbers in the national economy with a combined 265,000 positions (Tr. 28, 78). Additionally, as noted by the Commissioner, Plaintiff's argument is not supported by Sixth Circuit precedent. *See Monateri v. Comm'r of Soc. Sec.,* 436 F. App'x 434, 446 (6th Cir. 2011) (rejecting "the proposition that [DOT] jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work").

It is well established that the hypothetical question must set forth with reasonable precision the claimant's impairments and need only include those impairments and limitations found supported by the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."). The ALJ incorporated the supported limitations into the RFC and corresponding hypothetical question. (Tr. 23, 77). Accordingly, the ALJ's decision is substantially supported in this regard.

### III. Conclusion

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE** and is **AFFIRMED. IT IS FURTHER ORDERED THAT** that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Chief Magistrate Judge
